**BARNES & THORNBURG LLP**
Eric J. Beste (SBN 226089)
eric.beste@btlaw.com
Sara J. Triplett (SBN 260122)
sara.triplett@btlaw.com
655 W. Broadway, Suite 1300
San Diego, California 92101
Telephone:   (619) 321-5000
Facsimile:    (310) 284-3894

Attorneys for Plaintiff
MERCHANTS BANK OF INDIANA

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MERCHANTS BANK OF INDIANA, <br><br> Plaintiff-in-Interpleader, <br><br> v. <br><br> CONSUMER FINANCIAL PROTECTION BUREAU; J. PAUL REDDAM; ABSOLUTELY ZERO CORPORATION; CASHCALL, INC.; WS FUNDING, LLC; and DELBERT SERVICES CORPORATION, <br><br> Defendants-in-Interpleader. | Case No. 2:26-cv-7259 <br><br> **COMPLAINT-IN-INTERPLEADER AND FOR DECLARATORY RELIEF** <br><br> [Related to *Consumer Financial Protection Bureau v. CashCall, Inc., et al.*, Case No. 2:15-cv-07522-JFW-RAO (C.D. Cal.)] |

Plaintiff-in-interpleader Merchants Bank of Indiana ("Merchants" or the "Bank") brings this action for interpleader pursuant to Federal Rule of Civil Procedure 22 and for declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202. Merchants is a neutral stakeholder as to the assets in question pursuant to a Pledged Account Control Agreement (the "Control Agreement") that was entered into by Defendants-in-interpleader Consumer Financial Protection Bureau ("CFPB"), J. Paul Reddam, and Absolutely Zero Corporation. The Defendants-in-interpleader entered into the Control Agreement as part of a separate federal case but are now making competing and irreconcilable demands on Merchants concerning the disposition of an account currently holding approximately $144 million in assets. Worse, the Defendants-in-interpleader have threatened Merchants with legal action if Merchants does not comply with each party's demands. Because Merchants has a good-faith doubt as to what action it should take in the face of competing and irreconcilable demands, it respectfully requests this Court's assistance.

## **INTRODUCTION**

1. The instant dispute among the Defendants-in-interpleader stems from an enforcement action brought by the CFPB against J. Paul Reddam and CashCall, Inc., an entity that he owns and controls. *Consumer Financial Protection Bureau v. CashCall, Inc., et al.*, Case No. 2:15-cv-07522-JFW-RAO (C.D. Cal.) (the "Underlying Action"). The gravamen of the Underlying Action was that CashCall had engaged in an "unfair, deceptive, or abusive act or practice," in violation of 12 U.S.C. § 5536(a)(1)(B), by attempting to collect interest and fees to which it was not legally entitled. The CFPB prevailed on this claim in this Court, and after two trips to the Ninth Circuit, the District Court's order that CashCall pay legal restitution of more than $134 million was affirmed on appeal. *See CFPB v. CashCall, Inc.*, 35 F.4th 734, 743-47 (9th Cir. 2022); *CFPB v. CashCall, Inc.*, 135 F.4th 683 (9th Cir. 2025), *cert. denied*, 224 L. Ed. 2d 160 (Mar. 2, 2026).

2. During post-trial and appellate proceedings, the Defendants-in-interpleader agreed to stay enforcement of the judgment and abide by various agreements that authorized Merchants to maintain custody of an account owned by a company owned by J. Paul Reddam (the "Pledged Account") as security for the judgment against CashCall. Once certain conditions were met, these agreements set forth the steps that Merchants would be obligated to undertake with regard to the Pledged Account. One of those conditions was final resolution of CashCall's appeal, as well as "any petitions for re-argument, rehearing, or a writ of certiorari, any review by the United States Supreme Court and any further appeals relating to the Judgment (the '<u>Final Resolution</u>')."

3. On the one hand, Defendant-in-interpleader CFPB has asserted that a "Final Resolution" has occurred, that the Judgment Debtors have failed to pay the amounts due under the Amended Judgment within 60 days, and that the CFPB is entitled to exercise its right to possession of the assets in the Pledged Account over which Merchants has custody. Indeed, the CFPB has directed Merchants to transfer all collateral in the Pledged Account to the CFPB, and it asserted that Merchants' failure to do so would violate the Control Agreement and subject it to liability.

4. On the other hand, CashCall and Reddam (collectively, the "Judgment Debtors") assert that no "Final Resolution" has occurred because a motion pursuant to Federal Rule of Civil Procedure 60(b) to vacate the Amended Judgment ("Rule 60(b) Motion") has been filed in this Court.[1] Judgment Debtors contend that because of the Rule 60(b) Motion, Merchants must maintain the Pledged Account in its current status, and Merchants faces civil liability if it transfers, liquidates, or alters the collateral.

5. Merchants does not claim any beneficial ownership interest in the

---

[1] Although this Court recently dismissed the Rule 60(b) Motion for failure to comply with District Judge Walter's Standing Orders and Local Rule 7-3, Case No. 2:15-cv-07522-JFW-RAO (Dkt. # 413), the Judgment Debtors have now filed the required Joint Statement and indicated that they intend to file a renewed Rule 60(b) Motion. *Id.* (Dkt. # 415).

Pledged Account (except as to any customary fees or charges owed to Merchants). Merchants cannot safely determine which Defendant-in-interpleader is entitled to the Pledged Account without exposing itself to potential liability. Accordingly, Merchants seeks an order of this Court requiring the Defendants to interplead and litigate their respective rights to the Pledged Account among themselves; declaring Merchants' rights and obligations under the Control Agreement; and discharging Merchants from liability upon its compliance with the Court's order.

## PARTIES

6.     Plaintiff Merchants Bank of Indiana is a bank organized and existing under the laws of the State of Indiana, with its principal place of business at 410 Monon Boulevard, Carmel, Indiana 46032. Merchants is the "Financial Institution" as defined in the Control Agreement and maintains the Pledged Account that is the subject of this action.

7.     Defendant CFPB is an independent agency of the United States government, with its principal offices located at 1700 G Street NW, Washington, D.C. 20552. The CFPB is the "Judgment Creditor" under the Control Agreement and the Pledge Agreement and is the Plaintiff in the Underlying Action.

8.     Defendant J. Paul Reddam is an individual, citizen and, on information and belief, a resident of the State of California, with a notice address at One City Blvd West, Suite 1900, Orange, California 92868. Reddam is one of the "Judgment Debtors" in the Underlying Action and a party to the Control Agreement and the Pledge Agreement.

9.     Defendant Absolutely Zero Corporation ("Absolutely Zero") is an entity incorporated under the laws of California, with its office at One City Blvd. West, Suite 1900, Orange, California 92868. Absolutely Zero is an entity owned in full by J. Paul Reddam and is a "Judgment Debtor" and the "Pledgor" under the Control Agreement and the Pledge Agreement. The Pledged Account is maintained in the

name of Absolutely Zero Corporation.

10. Defendant CashCall, Inc. is, on information and belief, a corporation organized and existing under the laws of the State of California, with its principal place of business in Orange County, California. CashCall is a defendant and "Judgment Debtor" in the Underlying Action. CashCall's counsel has asserted adverse claims to the Pledged Account and threatened Merchants with liability in connection with the Pledged Account.

11. Defendant WS Funding, LLC ("WS Funding") is, on information and belief, a Delaware limited liability company and a wholly owned subsidiary of CashCall, Inc. WS Funding is a defendant and "Judgment Debtor" in the Underlying Action.

12. Defendant Delbert Services Corporation ("Delbert Services") is, on information and belief, a corporation organized and existing under the laws of Nevada, with its principal place of business at 7125 Pollock Drive, Las Vegas, Nevada 89119. Delbert Services is a defendant and "Judgment Debtor" in the Underlying Action.

## JURISDICTION AND VENUE

13. This action is brought pursuant to Federal Rule of Civil Procedure 22, which provides that "[p]ersons with claims that may expose a plaintiff to double or multiple liability may be joined as defendants and required to interplead."

14. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 because the Underlying Action—and any enforcement efforts by the CFPB related thereto—arises under federal law. In interpleader actions, as in declaratory judgment actions, federal-question jurisdiction exists where such jurisdiction would have existed in a coercive action by one or more claimants. See *Morongo Band of Mission Indians v. California State Bd. of Equalization*, 858 F.2d 1376, 1384 (9th Cir. 1988). That standard is satisfied here because the competing demands directed to Merchants

require determination of the parties' rights and obligations with respect to collateral securing a federal judgment entered by this Court in the Underlying Action. Such rights and obligations include (a) the interpretation, operation, and effect of the Amended Judgment entered by this Court in the Underlying Action; (b) the interpretation, operation, and effect of this Court's July 19, 2023 Order Staying Execution on the Amended Judgment Pending Appeal; (c) the CFPB's assertion of federal enforcement rights under the Amended Judgment and Pledge Agreement; (d) the effect of United States Supreme Court's decision on March 2, 2026, denying the petition for a writ of certiorari filed by the Judgment Debtors; and (e) the Judgment Debtors' Rule 60(b) Motion, together with their contention that, pending its resolution, no "Final Resolution" has occurred and any transfer of the collateral must be precluded, suspended, or deferred. The resolution of these questions will determine the parties' respective rights to the collateral in the Pledged Account.

15.    This Court has authority to grant declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202, because an actual controversy exists among interested parties and this Court has subject-matter jurisdiction under 28 U.S.C. § 1331.

16.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events, omissions, and judicial proceedings giving rise to this action occurred in this District, including the entry of the Amended Judgment and the July 19, 2023 Order Staying Execution in the Underlying Action. Venue is also appropriate because Section 7(c)(iii) of the Control Agreement expressly provides that, if Merchants commences an interpleader, it may do so in the United States District Court for the Central District of California, and the case should be related to the Underlying Action.

17.    This case should be deemed related to Underlying Action pursuant to Local Rule 83-1.3 and Section 7(c)(iii) of the Control Agreement, which expressly provides that any interpleader commenced by Merchants "should be related to" Case

No. 2:15-cv-07522-JFW.

## FACTUAL ALLEGATIONS

**A.     The Underlying Action and Amended Judgment**

18.     In 2013, the CFPB filed the Underlying Action against CashCall, WS Funding, Delbert Services, and Reddam, alleging the defendants engaged in an "unfair, deceptive, or abusive act or practice," in violation of 12 U.S.C. § 5536(a)(1)(B).  (Underlying Action, Dkt. #1).

19.     On February 21, 2023, this Court entered an Amended Judgment in the Underlying Action in favor of the CFPB. (Underlying Action, Dkt. # 374) (**Exhibit A**). This Amended Judgment awarded $157,050,978, plus post-judgment interest, in favor of the CFPB and against the Judgment Debtors.

**B.     The Stay Order, Pledge Agreement, and Control Agreement**

20.     On July 19, 2023, this Court entered an Order Staying Execution on the Amended Judgment Pending Appeal (the "Stay Order"). (Underlying Action, Dkt. # 406) (**Exhibit B**). The Stay Order stayed execution on the Amended Judgment pending appeal, any petitions for certiorari, any review by the United States Supreme Court, and any further appellate proceedings. The Stay Order provided that it shall "remain in effect for 60 days after the conclusion of all appellate proceedings related to the Amended Judgment."

21.     The Stay Order further provides that if the Amended Judgment is reversed or vacated, "the parties shall take all steps necessary to release and/or reconvey the Pledged Account."

22.     On July 19, 2023, the parties filed with this Court a Pledge Agreement (the "Pledge Agreement") executed by the CFPB, Reddam, and Absolutely Zero on July 10, 2023, pursuant to which the Pledged Account was established as security for the Amended Judgment. A true and correct copy of the Pledge Agreement is attached hereto as **Exhibit C**.

BARNES &
THORNBURG LLP
ATTORNEYS AT LAW
SAN DIEGO

6

COMPLAINT-IN-INTERPLEADER AND FOR DECLARATORY RELIEF

23.    On July 12, 2023, the CFPB, Judgment Debtors, and Merchants entered into the Pledged Account Control Agreement. This document was also filed with this Court on July 19, 2023.  A true and correct copy of the Control Agreement is attached hereto as **Exhibit D**.

24.    The Pledged Account is maintained at Merchants in the name of Absolutely Zero Corporation. The collateral in the Pledged Account includes, but is not limited to, the Pledged Account itself, cash, money, short-term Treasury bills, approved investments, income, proceeds, credit balances, and incidental rights, as defined in the Pledge Agreement.

25.    As of the date of this Complaint, the Pledged Account holds funds and investments with a current approximate value of $144,000,000.

**C.    Key Terms of the Control Agreement**

26.    Section 2 of the Control Agreement provides that if Merchants receives any "Judgment Creditor Instructions"—i.e., instructions originated from the CFPB directing the disposition of funds—Merchants shall comply with such instructions "without further consent by Judgment Debtors or any other person." Section 2 further provides that Merchants "shall not release any funds in the Pledged Account to Judgment Debtors or to any other person or entity without Judgment Creditor's prior written consent." Lastly, Section 2 provides that "Judgement Creditor and Judgement Debtors each hereby agree not to provide any instruction or order in contravention of the Pledge Agreement."

27.    Section 8 of the Pledge Agreement provides, in substance, that after a "Final Resolution" in favor of the Judgment Creditor, if the secured obligations are not paid in full within 60 days, the Judgment Creditor may exercise its enforcement rights with respect to the collateral (the "Enforcement Trigger").

28.    Section 7(c)(iii) of the Control Agreement provides, in relevant part, that if Merchants "in good faith, is in doubt as to the action it should take under this

Agreement, [Merchants] shall have the right (i) to commence an interpleader in the United States District Court for the Central District of California, and hereby agrees that if it commences such action, the case should be related to Case No. 2:15-cv-07522 JFW, and/or (ii) to take no further action, except, in each case, in accordance with joint instructions from Judgment Creditor and Judgment Debtors or in accordance with the final order of the court in such action."

**D.      Appellate Proceedings and Denial of Certiorari**

29.     Following the parties' appeal of the initial judgment, on May 23, 2022, the Ninth Circuit affirmed the finding of liability and remanded to this Court on the question of whether legal restitution was permitted. *CFPB v. CashCall, Inc.*, 35 F.4th 734, 743-47 (9th Cir. 2022)

30.     The District Court subsequently entered an Amended Judgment directing CashCall to pay over $134 million in legal restitution. The Court of Appeals affirmed this order in April 2025, and the Supreme Court denied certiorari in March 2026. *CFPB v. CashCall, Inc.*, 135 F.4th 683 (9th Cir. 2025), *cert. denied*, 224 L. Ed. 2d 160 (Mar. 2, 2026).

**E.      Defendants-in-interpleader's competing and inconsistent demands**

31.     On June 11, 2026, the CFPB (through its Assistant Litigation Deputy Christina Coll) sent a letter to Merchants directing Merchants to "transfer all Collateral in the Pledged Account to the CFPB" pursuant to the CFPB's wire instructions. The CFPB observed that because more than 60 days had passed since the Supreme Court's denial of certiorari, a "Final Resolution" in favor of the CFPB has occurred. The CFPB asserted that the Judgment Debtors had not paid their outstanding obligations under the Amended Judgment, and therefore an "Enforcement Trigger" had occurred under the Pledge Agreement. Accordingly, the CFPB directed Merchants, pursuant to the Control Agreement, to transfer the collateral in the Pledged Account to the CFPB.  A true and correct copy of this

correspondence from the CFPB is at **Exhibit E.**

32.    On June 11, 2026, counsel for CashCall and Reddam sent a letter to Merchants advising that the Judgment Debtors intended to file a motion pursuant to Federal Rule of Civil Procedure 60(b) to vacate the Amended Judgment and demanding that Merchants "maintain the status quo and refrain from taking any action to transfer, liquidate, close, re-register, or otherwise dispose of any collateral in or associated with the Pledged Account" absent joint instructions or a court order. A true and correct copy of the CashCall/Reddam letter is attached hereto as **Exhibit F**.

33.    On June 12, 2026, upon receipt of the competing June 11 letters, Merchants, through its Executive Vice President and General Counsel Terry Oznick, sent a letter to both the CFPB and counsel for CashCall/Reddam, stating that the competing demands "has caused Merchants to have a good faith doubt as to the action it should take under the Control Agreement" and that, "[t]herefore, pursuant to section 7(c)(iii) of the Control Agreement, Merchants will take no further action with respect to the Pledged Account . . . until it receives either (i) joint instructions from the CFPB and Judgement Debtors or (ii) an order from a court of competent jurisdiction." A true and correct copy of Merchants' June 12, 2026 letter is attached hereto as **Exhibit G**.

34.    On June 12, 2026, the CFPB sent a second letter to Merchants, reiterating its demand and stating that the CFPB "views not releasing the funds as a violation of [Merchants'] obligations under the control agreement and will take all appropriate actions against [Merchants]." The CFPB contended that the anticipated filing of a Rule 60(b) motion "does not affect the judgment's finality or suspend its operation" and that Section 7(c)(iii) of the Control Agreement "does not apply." A true and correct copy of the CFPB's June 12, 2026 letter is attached hereto as **Exhibit H.**

35. On June 17, 2026, counsel for CashCall and Reddam sent a further letter to Merchants asserting that "there has been no 'Final Resolution' of this matter as that term is defined in the Pledged Account Control Agreement," that Merchants "is not authorized to act on the CFPB's request," and that "[a]ny action by Merchants Bank to transfer, release, close, re-register, liquidate, set off against, encumber, restrict access to, or otherwise dispose of or alter the collateral or the Pledged Account . . . would constitute a material breach of the Control Agreement." CashCall and Reddam further warned that Merchants "would be exposed to liability to the Judgment Debtors for all resulting harm, including the value of the collateral, consequential damages, costs, and attorneys' fees." A true and correct copy of CashCall/Reddam's June 17, 2026 letter is attached hereto as **Exhibit I**.

36. On June 25, 2026, the Judgment Debtors filed a Rule 60(b) Motion (Dkt. # 412). In the Rule 60(b) Motion, the Judgment Debtors sought to vacate the Amended Judgment in its entirety by arguing, among other things, that the original judgment entered against them was satisfied, that intervening decisions of the United States Supreme Court have undermined the legal foundation of the Amended Judgment, that the CFPB has formally repudiated the enforcement priorities and legal theories underlying the Amended Judgment, and that the CFPB abandoned a settlement framework that it had provisionally accepted. The Judgment Debtors contended that, in light of the Rule 60(b) Motion, no "Final Resolution" has occurred within the meaning of the Pledge Agreement and the Control Agreement, and that the collateral in the Pledged Account must remain in place pending adjudication of the motion.

37. The relief sought in the Rule 60(b) Motion—vacatur of the Amended Judgment that the Pledged Account secures—bears directly on whether a "Final Resolution" has occurred, whether the CFPB is entitled to enforce against the collateral, and whether Merchants may lawfully comply with the CFPB's

instructions.

38. Despite Merchants' invocation of Section 7(c)(iii) and its stated intent to await joint instructions or a court order, Merchants reasonably fears competing demands and threats of liability from the Defendants-in-interpleader. Merchants has a genuine, good-faith doubt as to whether a "Final Resolution" has occurred within the meaning asserted by the parties, whether the CFPB's enforcement rights have been triggered, whether Merchants is presently required to comply with the CFPB's Judgment Creditor Instructions, whether the (soon to be refiled) Rule 60(b) Motion impacts Merchants' obligations, and what action, if any, it should take with respect to the Pledged Account.

39. Merchants faces a real and reasonable fear of multiple liability. If Merchants transfers the Pledged Account to the CFPB, CashCall and Reddam have threatened claims for breach of contract, damages, and attorneys' fees. If Merchants maintains the Pledged Account without transferring it, the CFPB has threatened claims for violation of the Control Agreement and has stated it will take "all appropriate actions" against Merchants.

40. Merchants has acted in good faith at all times and has not colluded with any Defendants-in-interpleader. Merchants claims no beneficial interest in the Pledged Account other than any fees or charges owed to it for routine maintenance and operation of the account under the Control Agreement.

41. Merchants is ready, willing, and able to continue maintaining custody of the collateral in the Pledged Account in accordance with the Control Agreement and the directions of this Court, pending resolution of the Defendants-in-interpleader's competing claims. Merchants respectfully requests that in lieu of liquidating the collateral or depositing it into the Court's registry, it be authorized to retain and maintain the collateral in the Pledged Account in its current form pending further order of the Court, without liability to any Defendants-in-interpleader. On

information and belief, Merchants understands that Defendants-in-interpleader are amenable to maintaining the collateral in the Pledged Account.

## CLAIMS FOR RELIEF

## COUNT I

## Interpleader (Fed. R. Civ. P. 22)

42. Merchants re-alleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

43. Merchants is a neutral stakeholder and disinterested party with respect to the Pledged Account. Merchants claims no beneficial ownership interest in the Pledged Account or the collateral held therein, other than any fees or charges owed for the routine maintenance and operation of the account.

44. The CFPB, on one hand, and CashCall and Reddam, on the other hand, have made competing and adverse demands concerning the Pledged Account. The CFPB demands immediate transfer of all collateral to the CFPB, while CashCall and Reddam demand that Merchants maintain the status quo and not transfer, liquidate, release, re-register, restrict, or otherwise alter the Pledged Account or the collateral held therein.

45. The competing claims of the Defendants-in-interpleader are such that Merchants cannot safely determine what action to take with respect to the Pledged Account without exposing itself to multiple or inconsistent liability.

46. Merchants has a good-faith doubt as to which of the Defendants-in-interpleader is entitled to direct or receive the Pledged Account or the collateral held therein.

47. Merchants has acted in good faith and without collusion with any Defendants-in-interpleader.

48. Pursuant to Federal Rule of Civil Procedure 22, Merchants is entitled to bring this interpleader action and to require the Defendants-in-interpleader to

interplead and litigate their respective adverse claims to the Pledged Account among themselves.

49. Merchants is entitled to be discharged from liability with respect to the Pledged Account upon compliance with such order as the Court may enter.

## COUNT II

### Declaratory Relief (28 U.S.C. §§ 2201, 2202)

50. Merchants re-alleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

51. An actual controversy exists between Merchants and the Defendants-in-interpleader concerning Merchants' rights and obligations under the Control Agreement, the Pledge Agreement, and this Court's prior orders, including:

(a) Whether a "Final Resolution" has occurred within the meaning of the Pledge Agreement and Control Agreement such that the CFPB's enforcement rights have been triggered;

(b) Whether Merchants is presently required to comply with the CFPB's Judgment Creditor Instructions and transfer all collateral in the Pledged Account to the CFPB;

(c) Whether the Rule 60(b) Motion, and any order thereon, affects or suspends Merchants' obligations under the Control Agreement or the CFPB's rights under the Pledge Agreement;

(d) Whether Merchants is authorized or required to maintain the Pledged Account in its current form pending further order of this Court;

(e) Whether Merchants should deposit or post a bond with respect to the stake with the Court, or otherwise maintain the account only pursuant to court order; and

(f) What actions, if any, Merchants may or must take with respect to the Pledged Account without incurring liability to any Defendants-in-

interpleader.

52.     This controversy is ripe and justiciable. The CFPB has directed Merchants to transfer the collateral and threatened action for noncompliance. CashCall and Reddam have threatened liability for any transfer. Merchants is caught between these conflicting demands and requires judicial guidance to fulfill its contractual obligations without incurring liability.

53.     Pursuant to 28 U.S.C. §§ 2201 and 2202, Merchants is entitled to a judicial declaration of its rights and obligations under the Control Agreement, the Pledge Agreement, and this Court's prior orders, and to such further relief as may be necessary or proper to effectuate such declaration.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Merchants Bank of Indiana respectfully requests that the Court enter judgment as follows:

1.     Requiring Defendants-in-interpleader to interplead and litigate among themselves their respective claims and rights to the Pledged Account and the collateral held therein;

2.     Declaring that Merchants has acted in good faith and without collusion with respect to the Pledged Account;

3.     Authorizing Merchants to maintain the Pledged Account in its current form pending further order of the Court, without liability to any Defendants-in-interpleader for such maintenance;

4.     Enjoining Defendants-in-interpleader, pending further order of the Court, from instituting or prosecuting any action or proceeding against Merchants relating to the Pledged Account, the collateral held therein, or Merchants' neutral maintenance thereof;

5.     Declaring Merchants' rights and obligations under the Control Agreement, the Pledge Agreement, and this Court's prior orders, including whether

Merchants must transfer the collateral, maintain the Pledged Account, deposit the stake, post a bond, or act only pursuant to court order;

6. Directing Merchants as to any transfer, liquidation, deposit, bond, release, or other disposition of the Pledged Account or the collateral held therein;

7. Discharging Merchants from all liability to any Defendants-in-interpleader with respect to the Pledged Account and the collateral held therein upon Merchants' compliance with the Court's order;

8. Awarding Merchants its reasonable attorneys' fees and costs incurred in this action to the extent available and appropriate under applicable law and equity; and

9. Granting such other and further relief as the Court deems just and proper.

Dated: July 2, 2026

Respectfully submitted,

**BARNES & THORNBURG LLP**

By: */s/ Eric J. Beste*
    Eric J. Beste
    Sara J. Triplett

Attorneys for Plaintiff-in-Interpleader
MERCHANTS BANK OF INDIANA